THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* BYRON LAPHAM and LEWIS D. FERRIS, Defendants.

(Supreme Court, Warren Trial Term, July, 1919.)

**Adverse possession — when claim of, not sustained — actions.**

> In an action by the people of the state to recover possession of Glen Island in Lake George, a defense based on a claim of adverse possession held not to have been sustained, and judgment directed for plaintiff.

ACTION to recover possession of Glen Island, in Lake George.

Merton E. Lewis, attorney-general (Burton H. Loucks, of counsel), for plaintiff.

James S. Kiley, for defendants.

WHITMYER, J. The action has been brought to recover possession of Glen Island, in Lake George. The defense is based on the claim of adverse possession. Defendant Ferris died before the trial and the action has proceeded against defendant Lapham. The latter claims under his father, Jerome Lapham, and the former claimed under his father, Orange Ferris. No patent for the island has ever been granted and it has not been sold on bond or otherwise. In 1871 a number of men formed a club and called it the Cold Water Club. It was not incorporated and was formed for outing purposes. Orange Ferris and Jerome Lapham were members. In 1872 Orange Ferris applied to the commissioners of the land office for a patent of the island to himself and Jerome Lapham, jointly. Thereafter, Ferris and Lapham applied for a lease. The club met on Phantom Island, just north of Glen Island in 1873 and the name was changed to the Glen Club and a cottage was built in that year. On September 8, 1874, the commissioners of the land office passed a resolution declining to sell or to lease any of the islands of Lake George and denied the several applications which were pending. In 1875 the commissioners appointed a superintendent to take charge of the islands owned by the state in the lake. That appointment was in effect until 1884. In 1876 the legislature prohibited the sale of the islands. In 1883 the state engineer and surveyor made

a map of the lake, including the islands, for the commissioners of the land office. It was ordered on file. In 1885 the forest commission was created and jurisdiction over the islands vested in the commission. On July 1, 1886, William McEchron, a member of the club, appeared before the commission in behalf of the club and asked for permission to the members to remain on the island as occupants. The commission declined. In its reports to the legislature it asked for power at different times to lease camp sites to occupants who had made improvements on islands occupied by themselves. Such power was given by chapter 707, Laws of 1892, and chapter 332, Laws of 1893, and numerous leases were thereupon made. A lease of Phantom Island was given to Jerome Lapham. Prior to June 6, 1893, the club applied for a lease of the island in question. The commission granted the request and fixed the rent at the sum of one hundred and fifty dollars per year. On August 1, 1893, it was modified and fixed at the sum of seventy-five dollars per year. Three signs marked " State land, Glen Island " were erected that year. The leases to Jerome Lapham and to the club were reported to the legislature in January, 1894. At some time prior to July 29, 1895, the club levied an assessment of ten dollars upon each member as his share of the rental. B. F. Lapham and Orange Ferris paid. On that date the plan of leasing the island was given up and said assessments were refunded. On July 29, 1895, a minute was entered in the minute book to the effect that it was decided injudicious to further consider the project of an enlargement of the house or of a new one, because the commission did not approve. At that meeting a resolution was passed requiring every member who desired to withdraw from the club to offer his interest to surviving members first. At the annual

meeting held April 7, 1899, a resolution was passed regulating the use of the cottage. At the annual meeting held July 3 and 4, 1903, the matter of necessary repairs to dock and cottage was considered and referred to a committee and at the annual meeting held July 2, 1904, an extra assessment of two dollars was levied to pay the cost of building a new dock. At the annual meeting held July 3, 1905, B. F. Lapham and Mortimer Lapham were appointed to make necessary repairs to the cottage. On July 4, 1906, Mortimer Lapham was authorized to make repairs at the expense of those who were willing to share. On July 8, 1907, Mortimer Lapham wrote to H. W. Fox, state superintendent of the forest commission, asking leave to make some improvements to the cottage and Mr. Fox answered on the next day declining to give such leave. These are some of the facts and clearly show without further details that defendants' claim cannot be sustained and that plaintiff is entitled to judgment.

Judgment accordingly.